IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF: INFORMATION ASSOCIATED WITH THE CELLULAR DEVICES ASSIGNED CALL NUMBER **207-680-0188** WITH IMSI **31024331341205** IN THE CUSTODY OR CONTROL OF T-MOBILE WIRELESS. | Case No. 3:23MJ5383<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, John Dreskler, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. Your affiant is an "investigative or law enforcement officer" of the United States within the meaning of 18 U.S.C. § 2510(7), in that I am an officer of the United States empowered by law to conduct criminal investigations and make arrests for offenses enumerated in 18 U.S.C. § 2516.

2. Your Affiant make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of cellular telephone assigned call number **(207) 680-0188**, with International Mobile Subscriber Identity (IMSI) 310240331341205, with no subscriber name (hereinafter "**Target Cell Phone**"), that is in the custody or control of T-Mobile, a wireless communications service provider headquartered at 4 Sylvan Way, Parsippany NJ, 07054. T-Mobile is a provider of an electronic communications service, as defined in 18 U.S.C. § 2510(15).

3. The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) and Federal Rule of Criminal Procedure 41 to require **T-Mobile** to disclose to the government the information further described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

4. Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act.  See 18 U.S.C. §§ 3121-3127.  The requested warrant therefore includes all the information required to be included in an order pursuant to that statute.  *See* 18 U.S.C. § 3123(b)(1) and Attachment C.

5. Your affiant has been a Special Agent (SA) with the Drug Enforcement Administration (DEA) since February 2017 and was previously a Police Officer in Fairfax County, Virginia since 2012. Your affiant is currently assigned to the DEA Toledo Resident Office in Ohio.  While with the DEA, your affiant has conducted investigations of illegal drugs traffickers and possessors that have led to arrests and convictions.  Your affiant has previously participated in investigations in the Commonwealth of Virginia and the State of Maryland as a Law Enforcement Officer, which have led to the arrest and conviction of illegal drugs traffickers. Your affiant has received training and experience in interviewing and interrogation techniques, arrest procedures, search warrant applications, surveillance, undercover operations, operations involving cooperating sources, and a variety of other investigative tools available to Law Enforcement Officers.  In the course of my training and experience, your affiant has become

familiar with the methods and techniques associated with the distribution of illegal drugs, the laundering of proceeds derived from the sale of illegal drugs, and the organization of drug conspiracies.  In the course of conducting these investigations, your affiant has been involved in the use of the following investigative techniques, among others: interviewing informants and cooperating sources; conducting physical surveillance; direct support to undercover operations; consensual monitoring and recording of both telephonic and non-telephonic communications; analysis of cell-site location data;  preparing and executing search warrants which have led to seizures of illegal drugs, firearms, contraband, and drug related assets; and analysis of financial documents and records.

6. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other investigators and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

7. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Sections 841(a)(1) and 846 have been committed, are being committed, and will be committed by HERRERA, David Omar, a suspected illegal drug trafficker and others known and unknown. There is also probable cause to search the information described in Attachment A for evidence, instrumentality, contraband, or fruits of these crimes as further described in Attachment B.

8. The Court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711.  Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated; *see* 18 U.S.C. § 2711(3)(A)(i).

## **PROBABLE CAUSE**

1.The United States, including the United States Drug Enforcement Administration (DEA) with its associated Special Agents, Task Force Officers, Task Force Agents, Intelligence Analysis, Investigative Assistances, and Police Officers or Detective (hereinafter investigators) have been conducting a criminal investigation of David Omar HERRERA with date of birth 10/20/1982, hereinafter HERRERA, and others regarding violations of Title 21, United States Code, Sections 841(a)(1) and 846 and other offenses. In particular, an investigation that began in September 2021, has identified crystal methamphetamine and poly-drug distributors in the Ohio area and other states who received illegal drugs from San Diego, California.  One method by which members of the HERRERA Drug Trafficking Organization (DTO) used to receive its illegal drugs is by shipping parcels containing illegal drugs to the Toledo, Ohio area and other states.  This DTO used various locations and associates working to send and receive illegal drug packages. The goal of this investigation is to identify and prosecute members of this Drug Trafficking Organization and the Mexico-based illegal drugs sources of supply.

2.Since September 2021, investigators have identified members of the HERRERA DTO and the methods of smuggling illegal drugs from San Diego, California. Between October, 2021 and August, 2022, investigators have seized approximately 18 kilograms of crystal methamphetamine, approximately 1 kilogram of cocaine, and over 600 pounds of marijuana which was smuggled from San Diego, California to Toledo, Ohio and other states by members of this DTO.  Investigators in Ohio and California have been coordinating to target for prosecution the members of this DTO and further identify HERRERA's network of criminal associates and methods of drug trafficking. Throughout this investigation, investigators have recruited and interviewed confidential sources (CS) or human sources of information (SOI) to develop

understanding of how this DTO is conducting its drug trafficking activity.  Confidential Source 1, hereinafter CS 1, was developed by investigators and has been providing reliable information since approximately March 2023.  CS 1 has a prior criminal history that includes an arrest for possession/sale of drugs.  Information provided by CS 1 has been corroborated to the extent possible by independent investigation of law enforcement, including but not limited to, consensually recorded telephone calls, information provided by other human sources of information, physical surveillance, and electronic surveillance.  CS 1 has been cooperating with law enforcement in exchange for prosecutorial consideration.

3. Throughout this investigation, investigators have obtained telephone toll records, telephone subscriber information, and commercial shipping company business records pursuant to administrative subpoenas, court orders, and search warrants. Investigators have conducted analysis of telephone records for members of the DTO and business records of shipping companies used by the DTO to send and receive packages containing illegal drugs or suspected to contain illegal drugs. This analysis led to the identification of Ranford Keith ROBERTS, hereinafter ROBERTS. ROBERTS was identified through significant research of law enforcement and/or publicly available databases to uncover layers of his false identity. Through additional research and analysis, ROBERTS, using his false identity, was determined to be the user of T-Mobile cellphone number 602-386-9155 and other phone numbers. T-Mobile provided records, pursuant to administrative subpoenas, linking the device assigned cellphone number 602-386-9155 to IP address sessions that were used to the track drug packages shipped to Toledo, Ohio. The device assigned cellphone number 602-386-9155 tracked a package in March 2022 containing approximately five (5) pounds of crystal methamphetamine, a package in April 2022 containing approximately five (5) pounds of marijuana, and another package in April 2022

containing approximately 7 pounds of crystal methamphetamine, plus other packages suspected to contain illegal drugs that were not intercepted by law enforcement.

4. Investigators provided CS 1 with a photograph of ROBERTS and CS 1 identified ROBERTS as a drug shipment facilitator for the HERRERA DTO who would package illegal drugs for shipment in California and send the packages to other members of the DTO for further distribution.

5. Investigators received information from a human source of information, herein after SOI 1. SOI 1 was developed by investigators and has been providing reliable information since approximately March 2023. SOI 1 has a prior criminal history that includes an arrest for assault. Information provided by SOI 1 has been corroborated to the extent possible by independent investigation of law enforcement, including but not limited to, consensually recorded telephone calls, information provided by other human sources of information or confidential sources, physical surveillance, and electronic surveillance. SOI 1 has been cooperating with law enforcement in exchange for prosecutorial consideration. SOI 1 told investigators that SOI 1 has travelled to San Diego, California and observed the drug trafficking operations of the HERRERA DTO. SOI 1 was shown a photograph of ROBERTS and identified him as a member for the DTO responsible for packaging illegal drugs for shipment. SOI 1 observed ROBERTS at a house used by the DTO in San Diego where illegal drug packaging was present. SOI 1 was shown a photograph of HERRERA and identified him as a person that SOI 1 observed providing another member of the DTO at least one (1) kilogram of cocaine while they were in a home in San Diego, California.

6. In July 2022, a DEA undercover agent conducted a controlled purchase of approximately eleven (11) pounds crystal methamphetamine from a member of the HERRERA

DTO. Following that controlled purchase, investigators conducted surveillance of the DTO member traveling to San Diego, California. CS 1 provided information to investigators regarding the purpose of the travel to San Diego, California. CS 1 told investigators that this trip to San Diego was, in part, to provide a drug payment to HERRERA for supplying the crystal methamphetamine that was sold to the DEA undercover agent. CS 1 explained that HERRERA conducted the majority of his drug trafficking activity in Southern California.

7. Between March 2023 and September 2023, investigators, with the assistance of CS 1, continued to collect evidence from electronic communication of HERRERA to further understand his drug trafficking operation. Investigators have found that HERRERA primarily uses internet-based messenger application to communicate his drug trafficking business. Pursuant to federal authorized search warrants and court orders, investigators have analyzed multiple messenger accounts and cellphone numbers used by HERRERA and other members of the HERRERA DTO, some which have been provided by or confirmed by CS 1. Investigators have identified cellphone number 1-858-209-3467 and 52-4523422672 associated with WhatsApp Accounts used by HERRERA. The record obtained by investigators showed HERRERA's WhatsApp accounts has been in contact with 207-680-0188, hereinafter **Target Cell Phone**, on approximately 29 occasion between April 21, 2023 and September, 8 2023. Investigators have also analyzed Apple iCloud Records obtained pursuant to a federally authorized search warrants and found that HERRERA had saved the **Target Cell Phone** in his contacts under the name "David". It is your affiant's experience that drug traffickers often use alias' and will save phone numbers under alias names to avoid law enforcement detection and protect the identification of criminal associates. Additionally, investigators were given consent to searched a cellphone used by CS 1. Within CS 1's cellphone content there was a WhatsApp

conversation with the **Target Cell Phone** regarding drug shipments in February and March 2023. CS 1 confirmed the conversation with the **Target Cell Phone** was a conversation with ROBERTS regarding drug trafficking activity. CS 1 also showed investigators messages that CS 1 had with the **Target Cell Phone** in September 2023, which CS 1 stated was a conversation with ROBERTS.

8. On September 11, 2023, investigators reviewed T-Mobile business records concerning the **Target Cell Phone** that were acquired on September 9, 2023 pursuant to an administrative subpoena. The T-Mobile records showed a change to the subscriber information for the **Target Cell Phone** starting on July 2, 2023. T-Mobile records for the **Target Cell Phone** reviewed by investigators prior to July 2, 2023 showed a different IMSI than currently assigned to the **Target Cell Phone** by T-Mobile and the customer name "B S" which is no long the customer name shown in T-Mobile Records for the **Target Cell Phone**. Your affiant conferred with a T-Mobile Legal Compliance Specialist regarding these changes to the business records for the **Target Cell Phone** and determined that the record change occurred when the **Target Cell Phone** number was transferred to Q-Link, a whole sale partner of T-Mobile which provides free government wireless services. According to the T-Mobile Compliance Specialist it appeared that T-Mobile sold the number for the **Target Cell Phone** to Q-Link in a batch, however T-Mobile is still providing the cellular network for the **Target Cell Phone** and providing toll records in response to legal process. Based on the continued contact with between HERRERA and the **Target Cell Phone** before and after the July 2023 records change, the continued contact between CS 1 and ROBERTS using the **Target Cell Phone** before and after the July 2022 records change**,** and the explanation provide by T-Mobile for the record change in July 2022, it is your affiant's belief that ROBERTS continued to use the **Target Cell Phone** as of September 9, 2023.

9. Based on this information, other information gathered during this investigation, and the training and experience of the investigators in this case, it is your affiant's belief ROBERTS is a member of the HERRERA DTO and ROBERTS is and will continue to use the **Target Cell Phone** to conduct his drug trafficking activity.

**SUMMARY AND ASSERTIONS**

10. It is your affiant's belief, since at least April, 2023, and continuing through at least September 8, 2023, ROBERTS has used the **Target Cell Phone** to communicate with HERRERA. HERRERA is poly-drug trafficker. ROBERTS is a member of the HERRERA DTO and is involved in the packaging and shipping of illegal drugs from California. The location data for the **Target Cell Phone** will provide location information for ROBERTS.

11. In your affiant's training and experience, individuals engaged in drug trafficking often physically travel to pick-up or deliver drugs and perform other facilitative activities. Through the acquisition of location data for the **Target Cell Phone** it is hopeful the user of the **Target Cell Phone** can be confirmed and that the user's movements can be monitored as investigators believe the user will travel to locations in connection with drug trafficking activities. Additionally, obtaining location data for the **Target Cell Phone** will assist in surveillance and possibly identifying locations where the user conducts drug trafficking activity and identifying co-conspirators in the users' drug trafficking activity.

12. In your affiant's training and experience, your affiant has learned that **T-Mobile** are the companies that provides cellular communications service to the general public. Your affiant also knows that providers of cellular communications service have technical capabilities that allow them to collect and generate information about the locations of the cellular devices to which they provide service, including cell-site data, also known as "tower/face information" or

"cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular device and, in some cases, the "sector" (i.e., faces of the towers) to which the device connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate general location of the cellular device.

13. Based on your affiant's training and experience, your affiant knows that **T-Mobile** can collect cell-site data on a prospective basis about the **Target Cell Phone**. Based on your affiant's training and experience, your affiant knows that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication. Your affiant also knows that wireless providers such as **T-Mobile** typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

14. Based on your affiant's training and experience, your affiant knows that **T-Mobile** also can collect per-call measurement data, which **T-Mobile** also refers to as the "real-time tool" ("RTT"). RTT data estimates the approximate distance of the cellular device from a cellular tower based upon the speed with which signals travel between the device and the tower. This information can be used to estimate an approximate location range that is more precise than

typical cell-site data. Your affiant knows that **T-Mobile** also can collect information about the location of the **Target Cell Phone** during all times of day and night including all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the **Target Cell Phone.**

15. Based on your affiant's training and experience, your affiant knows each cellular device has one or more unique identifiers embedded inside it. Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique identifiers – as transmitted from a cellular device to a cellular antenna or tower – can be recorded by pen-trap devices and indicate the identity of the cellular device making the communication without revealing the communication's content. Currently, the **Target Cell Phone** has IMSI 311480553138638.

16. Based on your affiant's training and experience, your affiant knows that wireless providers such as **T-Mobile** typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. Your affiant also knows that wireless providers such as **T-Mobile** typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or

other communications sent or received by a particular device and other transactional records, in their normal course of business. In your affiant's training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the **Target Cell Phone's** user or users and may assist in the identification of co-conspirators and/or victims.

## AUTHORIZATION REQUEST

1. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

2. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the **Target Cell Phone** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. See 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. See 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. See 18 U.S.C. § 3103a(b)(2).

3. I further request that the Court direct **T-Mobile** to disclose to the government any information described in Attachment B that is within the possession, custody, or control of **T-**

**Mobile**.  I also request that the Court direct **T-Mobile** to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with T-Mobile's services, including by initiating a signal to determine the location of the **Target Cell Phone** on **T-Mobile**'s network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.  The government shall reasonably compensate **T-Mobile** for reasonable expenses incurred in furnishing such facilities or assistance.

4.    I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the **Target Cell Phone** outside of daytime hours.

Respectfully submitted,

Special Agent John Dreskler, DEA

Sworn to via telephone on this 18th day of September 2023 after submission by reliable electronic means.  Fed.R.Crim.P. 4.1 and 41(d)(3).

_____
DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE